[Civ. No. 2807.  Third Appellate District.—April 17, 1925.]

BAILEY TRADING CO. (a Corporation) et al., Appellants, v. J. T. LEVY, Respondent.

[1] SALES—PURCHASE OF COMMODITY — MERCHANTABILITY OF — RELIANCE UPON IMPLIED OR STATUTORY WARRANTY—INSPECTION.—The buyer of a commodity, when relying upon an implied or a statutory warranty that the article purchased is in a sound and merchantable condition when the purchase was made, cannot relieve himself and charge the seller on the ground that the examination will occupy time, and is or may be attended with inconvenience and labor.

[2] ID.—WARRANTY—PLEADING.—Where an action is founded on a statutory right or a right deducible wholly from statute, the plaintiff must, by his complaint, bring himself squarely and clearly within the terms or provisions of the statute upon which he relies or must rely to state a cause of action; in other words, where a party relies upon a general or a statutory warranty for a recovery the terms thereof, and the facts from which damages for its breach are to be inferred must be set forth with reasonable certainty.

[3] ID. — PURCHASE OF MILO—ALLEGED BREACH OF WARRANTY UNDER SECTION 1771, CIVIL CODE — PLEADING — INSUFFICIENCY OF COMPLAINT.—A cause of action for damages for alleged breach of the warranty declared by section 1771 of the Civil Code in connection with a sale of milo is not stated by a complaint which, in addition to alleging that at the time of the sale the milo was located a distance of about twelve miles from the place where the sale was effected, alleges that the milo was, at the time

the sale was consummated, loaded on board a freight-car of a railroad company at its railroad yards at a certain station, and was "ready for shipment" by freight in a railroad train of said company, and the same was "immediately" forwarded by freight in said company's train to market at another place, for the reason that such complaint is uncertain as to whether the milo was, at the time the sale was completed, in the possession and under the control of the carrier, and, therefore, in a condition in which it was impracticable for the buyers (plaintiffs) to examine or inspect it.

[4] ID.—WORDS AND PHRASES.—The word "immediately" is a relative term—that is to say, the real scope of its signification, like the phrase "ready for shipment," is to be measured and determined by the circumstances or connection in which it is used.

[5] ID.—SUSTAINING OF DEMURRER TO COMPLAINT—AMENDMENT—APPEAL—DISCRETION.—On this appeal from a judgment dismissing an action after sustaining a demurrer to plaintiffs' complaint, conceding it was within the ability of the plaintiffs to amend the complaint so that it would state a cause of action, under section 1771 of the Civil Code, still the order of the court, on sustaining the demurrer, denying leave to amend the complaint for the second time, cannot be reviewed, since it is not made affirmatively to appear that the trial court, in making such order, abused its discretion, and, further, because it is not shown by the record that the plaintiffs made application for leave to amend after the demurrer was sustained, or indicated in any manner how the complaint could be amended so as to meet the objections raised by the demurrer.

(1) 35 **Cyc.**, p. 397, n. 21.    (2) 31 **Cyc.**, p. 115, n. 41.    (3) 35 **Cyc.**, p. 446, n. 42.    (4) 31 **C. J.**, p. 249, n. 38; 33 **Cyc.**, p. 1539, n. 86.    (5) 4 **C. J.**, p. 938, n. 10.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. J. Cheatham for Appellants.

L. W. Hughes for Respondent.

HART, J.—This action is for damages for the breach of a general warranty, as provided by section 1771 of the Civil Code, that a certain quantity of milo purchased by

plaintiffs from defendant was, at the time of said sale, in a sound and merchantable condition.

The defendant demurred to the first amended complaint on both general and special grounds, and the court sustained the demurrer, without leave to amend, and thereupon rendered judgment dismissing the action.

This is an appeal by the plaintiffs from said judgment.

The complaint, as amended, alleges:

"That at the City of Corning, in the County of Tehama, State of California, on or about the 30th day of October, 1923, plaintiffs purchased from defendant, 491 bags of Milo and paid defendant then and there and therefor the sum of Nine Hundred Ninety and 89/100 Dollars, lawful money of the United States; that at the time plaintiffs purchased said Milo the same was loaded on board a freight car of the Southern Pacific Company at its railroad yards at Gerber Railroad Station, in said County of Tehama, State of California, about twelve miles from the said City of Corning, and was ready for shipment by freight, in a railroad train of said Southern Pacific Company, to market at San Francisco, California, and was inaccessible to the examination of plaintiffs at the time of the purchase thereof, and the same was immediately forwarded by freight in said Southern Pacific Company's train to market at said City and County of San Francisco, State of California. That plaintiffs purchased said Milo to be marketed and sold in said City of San Francisco, all of which was well known to defendant at the time he sold the same to plaintiffs.

"That said Milo was harvested in an unripe condition and was sacked and prepared for shipment while the same was wet and damp, *and at the time plaintiffs purchased the same was wet and damp in the sacks aboard said freight car and was unmerchantable and continued to be unmerchantable until the same arrived in the said City of San Francisco by the usual and customary mode of transportation by said Southern Pacific Freight Train.* That by reason of the said Milo's being sacked while damp and moist the same heated and greatly depreciated in value and was unmerchantable.

"That had said Milo been in a merchantable condition at the time same was purchased and sold the same would have been of the value of Eleven Hundred Sixty and 75/100, but on account of the unmerchantable condition thereof at the

time the same was purchased and sold it was of the value of only Six Hundred Thirteen and 34/100 Dollars;

"That plaintiffs have been damaged in the sum of Five Hundred Forty Seven and 41/100 Dollars by reason of defendant's having sold them the said Milo in said unmerchantable condition."

As indicated above, the plaintiffs ground their action on section 1771 of the Civil Code, which reads as follows: "One who sells or agrees to sell merchandise inaccessible to the examination of the buyer, thereby warrants that it is sound and merchantable."

In sustaining the demurrer the learned trial judge said: "The court is of the opinion that the complaint does not state facts sufficient to show that the goods sold were inaccessible to the examination of the buyer. They were only twelve miles away and he could have examined them had he taken the trouble to make a trip to Gerber."

It is to be assumed from the foregoing observations of the court on sustaining the demurrer, the court conceived that the ground upon which the plaintiffs relied, in attempting to invoke the warranty provided by section 1771 of the Civil Code, was that the alleged inaccessibility to the examination of the milo by the plaintiffs lay in the fact that, at the time the contract of sale was made and completed, the milo was situated at a point twelve miles from the point where the sale was effected. It may likewise be assumed that the argument of the demurrer in the court below was confined, in its scope, to the same restricted view of the pleading. If that was all that there was to the complaint—that is to say, if the alleged "inaccessibility to examination" was grounded entirely on the fact of the distance between the two points referred to, then there would be no reason for the least hesitation in agreeing with the trial court's conclusion that such fact was not such as to make section 1771 of the Civil Code applicable here. **[1]** It has always been held that the buyer of a commodity, when relying upon an implied or a statutory warranty that the article purchased is in a sound and merchantable condition when the purchase was made, cannot relieve himself and charge the seller on the ground that the examination will occupy time, and is or may be attended with inconvenience and labor. (*Barnard* v. *Kellogg*, 10 Wall. 383 [19 L. Ed. 987, 989, see,

also, Rose's U. S. Notes]. See, also, *Hyatt* v. *Boyle,* 5 Gill & J. (Md.) 110, 25 Am. Dec. 276, 281; 2 Mechem on Sales, sec. 1312.) Mr. Mechem says: "The rule is not altered by the fact that the examination or inspection will consume time or is attended with labor or inconvenience. No exception to it can be admitted, to use the language of a leading case (referring to *Hyatt* v. *Boyle, supra*), except 'where the examination at the time of the sale is, morally speaking, impracticable, as where goods are sold before their arrival or landing. The mere fact of the inspection being attended with inconvenience or labor is not equivalent to its impracticability. If the purchaser desire to avoid it, and yet obtain the protection it would afford him, he must do so by exacting from the vendor an express warranty of quality.'"

But the plaintiffs here, in attempting to introduce into the contract of sale the provisions of section 1771 of the Civil Code, go further than merely relying on the fact of the distance between the point where the contract was made and the point where the milo was situated at the time of the consummation of the sale and the inconvenience and labor which would be entailed by reason of that fact in inspecting the milo. It will be seen that, immediately preceding and in immediate connection with the statement that there was a distance of twelve miles between Corning, where the sale was effected, and Gerber, where the milo was situated, at the time of the making of the contract, the complaint alleges that the milo was, at the time the sale was consummated, "loaded on board a freight-car of the Southern Pacific Company at its railroad yards at Gerber railroad station, . . . and was ready for shipment by freight in a railroad train of said Southern Pacific Company . . . and the same was immediately forwarded by freight in said Southern Pacific Company's train to market at said City and County of San Francisco," etc. Further, in alleging that at the time the sale was made the milo was in an unsound and unmerchantable condition, the complaint (par. 3) adds that, at the time mentioned, the milo "was wet and damp in the sacks aboard said freight-car." By all these averments, we may conjecture, it was the intention and purpose of the pleader to make it appear that, at the very time the contract of sale was consummated, the milo had not only been loaded on a freight-car of the railroad company, but

had been delivered into the possession and the control of the carrier. If such fact were clearly shown by the complaint, there would then be presented here an entirely different situation from that with which we are confronted. If, to be more explicit, the milo, at the time the sale thereof was made, was in the possession and under the control of the carrier, there would then exist, by reason of that fact, very strong ground for holding that the article was, when purchased, inaccessible to the examination of the plaintiffs, since such possession and control would be exclusive (subject, of course, to the right in the consignor of stoppage in transit) until the carrier's contract to transport and deliver the milo to the consignee at the place of consignment had been fulfilled. But it may be set down as a sound hypothesis, deduced from common knowledge, that if the milo was not, at the time the sale was made, in the possession and control of the carrier, it would not have been impracticable, "morally speaking," for the purchaser to have subjected it to a satisfactory examination before completing the purchase, notwithstanding that the commodity was, at said time loaded, in sacks, in a freight-car standing in the railroad yards of the carrier. By employing the method commonly practiced by buyers of cereals already in sacks to test the qualities of such commodities, there would be no more impracticability in the work of inspecting grain or corn in sacks loaded on a freight-car than is ordinarily experienced in like examinations where the corn or grain is in sacks and the sacks stacked in the usual way on the ground or in a warehouse. So it is manifest that the primary question here is whether the complaint, with requisite certainty, discloses that the milo, at the time of the sale, was or was not in the possession and under the control of the carrier, and, therefore, not subject to be interfered with until the carrier's bailment had been terminated by any of the means by which that result may properly be accomplished.

[2] In construing the complaint to determine what the answer to that question should be, we must keep in mind the proposition that the relief sought herein is one which is alone afforded or authorized by statute—that is to say, the plaintiffs are relying upon a right given solely by statute, and that the rule is that where an action is founded on a statutory right or a right deducible wholly from statute,

the plaintiff must, by his complaint, bring himself squarely and clearly within the terms or provisions of the statute upon which he relies or must rely to state a cause of action. "When a pleader wishes to avail himself of a statutory privilege or right given by particular facts, he must show the facts, and those facts which the statute requires as a foundation of the action must be stated in the complaint. . . . In remedial actions founded on a statute such averments must be made as are necessary to prove the case within the statute." (Sutherland on Code Pleading and Practice, sec. 5630. See, also, *Dye* v. *Dye,* 11 Cal. 163, 167, 168; *Himmelman* v. *Danos,* 35 Cal. 441, 448; *County of San Luis Obispo* v. *Hendricks,* 71 Cal. 242, 246 [11 Pac. 682].) In other words, where a party relies upon a general or a statutory warranty for a recovery the terms thereof and the facts from which damages for its breach are to be inferred must be set forth with reasonable certainty. (35 Cyc. 446.)

[3] The complaint here, in our opinion, does not measure up to the requirements of the rules above stated. Undeniably, an attempt is thus made to state a cause of action founded upon section 1771 of the Civil Code, but it is nothing more than an attempt. It will be seen that, while the complaint states that the corn, at the time the sale was made, "was on board" a freight-car of the carrier named "and was ready for shipment," it is not stated that the carrier had accepted possession and control thereof for the purpose of transporting it to the destination to which it was the intention to consign it. The phrase "ready for shipment," as used in the complaint, is susceptible of different interpretations or applications, each being fairly and reasonably within the signification thereof. When one engaged in the business of selling and shipping articles of merchandise or farm products, and which are required to be packed in boxes, kegs, barrels, or in bales, and such articles are packed for the purpose of their shipment to some other point, even before being taken by truck or other means from the place where packed to a railroad station or steamboat landing to be put on board a car or a vessel, they are then "*ready* for shipment"—that is, they are fully prepared for that purpose. If, in this case, the milo had been sacked with a view of shipping it to market or to a particular consignee and in that condition was still in a warehouse

on the land from which it was harvested, it would then, in a general sense, be "ready for shipment," and for sufficient reasons might, while so situated, thus remain "ready for shipment" for several days or even weeks. The same might be true in the case of the loading of agricultural products on a freight-car of a carrier of freight standing in the railroad yards of the latter. Hence, it is to be seen that it does not necessarily follow from the fact that the milo in question was loaded on a car of the carrier, and that such car was standing in the railroad yards of the latter, the carrier has been given or has taken possession and control of the freight immediately upon the completion of the work of loading, particularly in view of the fact that it is commonly known to be true that the loading of farm products on railroad cars is generally the work of the seller or shipper himself. Thus sufficiently is it made apparent that the complaint here is not clear or certain as to the meaning of the averment we are now considering. It may be suggested, though, that if it had been directly alleged that, at the time the sale was effected, the milo was loaded in the freight-car of the carrier, and that the car, if not an open one, had been sealed after such loading, or that the carrier had accepted the milo as freight, issuing and delivering to the shipper a receipt or bill of lading therefor, or something of similar import had been alleged in the complaint, then the pleading would make a strong showing that it was impracticable for the plaintiffs to inspect or examine the milo and thus a cause of action would probably under the statute be stated.

Nor does the averment that the milo was *"immediately forwarded by freight in said Southern Pacific Company's train to market at said City and County of San Francisco"* make the complaint any clearer upon the question whether the milo was, at the time the sale was completed, in the possession and under the control of the carrier and, therefore, in a condition in which it was "morally" impracticable for plaintiffs to examine or inspect it.

[4] The word "immediately" is a relative term—that is to say, the real scope of its signification, like the phrase, "ready for shipment," is to be measured and determined by the circumstances or connection in which it is used. Like many other words, it possesses the quality of elasticity.

When used in a pleading or legal documents or transactions involving obligations and duties springing from contract, it must be interpreted and understood according to the circumstances peculiar to the act or thing to be done. The lexicographers, it is true, define the word (as it is commonly understood) as meaning something "not to be deferred by an interval of time; at once, instantly," etc. But common sense tells us that there are things and acts which it may be provided shall be done "immediately" which cannot, in the very nature of the case, be done without the intervention of "an interval of time," or at the very instant of time the order or direction to do the thing is given. A party may order a building to be removed from his land "immediately." He may make a contract to that effect. The building, however, as is obvious, could not be removed until the necessary preparation therefor had been made, and then a number of days or even weeks might be required to do the work; yet the contract calling for immediate removal would be performed, if no more time than was necessary to accomplish the task was consumed. Thus, it is apparent, the word "immediately" would not and could not, under some circumstances, mean "at the very instant of time," or without the intervention of such an interval of time after the order or directions are given as would be necessary to render it practicable to do the thing or act and that, as above stated, the signification of the word must be determined according to the circumstances in connection with which it is used. The decisions express similar views.

In *Inhabitants of Robbinston* v. *Inhabitants of Lisbon*, 40 Me. 287, 288, it is held that the word "immediate" means within such convenient time as is required for doing the thing. In *Guthrie* v. *Carney*, 19 Cal. App. 144 [124 Pac. 1045], it is, in effect, said: "Immediate delivery," as used in a statute requiring immediate delivery and change of possession, while not requiring a delivery *instanter*, requires delivery within a reasonable time according to the character of the property, its situation, and all the attending circumstances. (See, also, 2 Words and Phrases, Second Series, p. 942.)

In *Feeley* v. *Boyd*, 143 Cal. 282 [65 L. R. A. 943, 76 Pac. 1029], the court said: "We think the words 'immediate delivery' must be given a reasonable construction. The

words do not mean a delivery *instanter*. The word 'immediate' is defined in Bouvier's Law Dictionary (Rawle Revision), where it is said: 'Strictly it implies not deferred by any lapse of time, but as usually employed, it is rather within reasonable time having due regard to the nature and circumstances of the case. This word and "immediately" are of no very definite signification, and are much subject to the context. In legal proceedings they do not impart the exclusion of any interval of time.' ''

There are many other cases in which it is shown that the signification or meaning of the word "immediate" or "immediately" must often be accepted, not in the sense in which it may commonly be understood to imply, but according to the circumstances or the connection in which or the purpose to subserve which it is employed.

Thus we have referred to the definitions variously given in the judicial decisions of the word "immediate," and its adverbial derivative "immediately," merely to illustrate the proposition that neither word bears a set or definitely fixed signification which is indiscriminately appropriate to all the varying conditions and circumstances in which it may be used.

From the foregoing considerations it will be seen that it is not possible to determine from the words "immediately forwarded" or the phrase "ready for shipment" the particular point of time with respect to the time the sale was made at which the milo was delivered into the possession and control of the carrier. It is certainly true that those phrases, as they are employed in the plaintiffs' pleading, are no less subject to the interpretation that the corn was ready for shipment and was forwarded or started on its way and so under the control of the carrier at some time subsequent to the consummation of the contract of sale than to the interpretation that the corn was or had been forwarded at the time of the sale. In other words, so far as it may be determined from the phrases referred to, as they are used in the complaint, the milo might not have been in the possession of the carrier or forwarded or started on the way to its destination until after such an interval of time following the sale as would have afforded the plaintiffs ample opportunity to subject it to an examination by the method commonly resorted to in examining cereals already

in sacks, and this proposition is no less true when both phrases are considered in connection with each other or when the complaint is examined in its entirety. Therefore, whether the act of forwarding the corn by freight or the fact of its being "ready for shipment" occurred and existed on the same day the milo was sold or on some succeeding day is a matter which cannot be ascertained or determined with certainty from the complaint. Hence, it must be held that the averments of the complaint are so uncertain as to the time when the milo was delivered, *pro re nata*, into the exclusive possession and control of the carrier, so that it was impracticable for the plaintiffs to examine or inspect before buying it, that that pleading fails to state a cause of action for the breach of the statutory warranty upon which the plaintiffs rely for a recovery. In other terms, the complaint is uncertain as to whether, at the time of the sale, or when negotiations for the purchase of the milo were still pending, an opportunity was afforded the plaintiffs to examine the article or, stating it in another form, it is not made to appear by the complaint with the requisite degree of certainty that such opportunity was denied the plaintiffs, and, therefore, the objection to the complaint, because of such uncertainty, does not go merely to the question of the insufficiency of the statement of the facts set forth therein, but to that of the insufficiency of the facts stated to disclose a cause of action. Thus it is clear that the plaintiffs have not by their complaint brought themselves clearly within the terms of the statute by which the right upon which they declare is alone given.

[5] Whether it was within the ability of the plaintiffs to amend the complaint so that it would state a cause of action, under section 1771 of the Civil Code, is a matter as to which, of course, we can venture no opinion or even conjecture. But, conceding that they could, still the order of the court, on sustaining the demurrer, denying leave to amend the complaint for the second time, cannot be reviewed, since it is not made affirmatively to appear that the trial court, in making such order, abused its discretion, and, further, because it is not shown by the record that the plaintiffs made application for leave to amend after the demurrer was sustained, or indicated in any manner how the complaint could be amended so as to meet the objections raised by the demurrer. (*Stewart* v. *Douglas,* 148 Cal. 511 [83

Pac. 699]; *Varni* v. *Devoto,* 10 Cal. App. 304 [101 Pac. 934]; *Carley* v. *Vallecita Min. Co.,* 16 Cal. App. 781 [117 Pac. 1037]; *Durrell* v. *Dooner,* 119 Cal. 411 [51 Pac. 628]; *Prince* v. *Lamb,* 128 Cal. 120 [60 Pac. 689]; *Williamson* v. *Joyce,* 140 Cal. 669 [74 Pac. 290]; *Murphy* v. *Murphy,* 57 Cal. App. 182, 186 [207 Pac. 43]; *Whyte* v. *City of Sacramento,* 65 Cal. App. 534 [224 Pac. 1008, 1012]; *Philbrook* v. *Randall et al.,* 195 Cal. 95 [231 Pac. 739]; 2 Cal. Jur., p. 262.)

For the reasons stated the judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.