Argued December 13, 1927, affirmed January 10, 1928, rehearing denied February 28, 1928.

## AMERICAN SODA FOUNTAIN CO. *v.* MEDFORD GROCERY CO.

(262 Pac. 939.)

For appellant there was a brief over the name of *Mr. O. C. Boggs,* with oral arguments by *Mr. J. F. Fliegel* and *Mr. Roy F. Shields.*

For respondent there was a brief over the name of *Mr. E. E. Kelly*, with an oral argument by *Mr. Porter J. Neff*.

RAND, C. J.—This is an action to recover the balance of the price of a carload of fruit syrups and crushed fruit which were manufactured by plaintiff at Boston, Massachusetts, and sold to defendant at a delivered price at Medford, Oregon. It was stipulated at the trial that the goods were delivered on May 28, 1920, for a delivered price of $5,903.25 and that defendant had paid thereon $1,254.60 at the time of delivery and $1,000 additional on July 15, 1920. The action was commenced on February 1, 1922. The evidence shows that these goods were inclosed in hermetically sealed containers and it is alleged in the answer and admitted by the reply that at the time of delivery the defendant had no opportunity to examine the goods and that if an examination had been made it would not have revealed any defect in the goods. The defendant was a wholesale grocer and bought the goods for the purpose of reselling them to its customers. The defense is that the defendant made known to plaintiff the particular purpose for which the goods were bought and relied on plaintiff's skill and judgment in manufacturing them, thereby creating an implied warranty on plaintiff's part that the goods would be reasonably fit for that purpose and that they did not correspond to the warranty and that, because of the breach thereof, defendant sustained damage in a sum in excess of the unpaid balance of the agreed price. The cause was tried before the court and a jury and defendant had verdict for the sum of $1.00 and from the resultant judgment, plaintiff appealed.

Plaintiff relies for the reversal of the judgment upon the refusal of the court to direct a verdict in favor of plaintiff for the full amount of the unpaid balance with interest thereon from the date of delivery, the refusal of the court to charge the jury upon the law as requested by plaintiff, and the rulings of the court upon the admission of testimony over the objection and exception of defendant.

1. The evidence showed that the order for the goods was given to a traveling salesman of the plaintiff and that the goods were shipped and sold pursuant to such order, and that at the time of receiving the order the salesman knew that the defendant was a wholesaler and was purchasing the goods for the purpose of resale to operators of soda fountains. This was notice to plaintiff of the particular purpose for which the goods were bought. The evidence also showed that when delivered the goods were inclosed in hermetically sealed containers and that in that condition no examination to determine the quality or condition of the contents of the containers could be made without opening them and that if opened, unless, immediately consumed, the goods would spoil. Hence, the buyer not having had an opportunity to examine the goods and from such examination to have ascertained their defects, the rule of *caveat emptor* would not, at common law, have applied since plaintiff, the seller, was the manufacturer thereof.

The section of our Code dealing with implied warranties as to quality or fitness is Section 8178, Or. L. (Section 15, Uniform Sales Act). Its first three subsections provide:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty

or condition as to quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

In discussing the construction to be given the words "particular purpose" as used in subsection 1 of Section 15, Professor Williston in 1 Williston on Sales (2 ed.), Section 248, says:

" * * The last edition of Benjamin on Sales thus summarizes the results of the English decisions: 'A particular purpose is not some purpose necessarily distinct from a general purpose; for example, the general purpose for which all food is bought is to be eaten, and this would also be the particular purpose in any specific instance. A particular purpose is, in fact, the purpose, expressly or impliedly communicated to the seller, for which the buyer buys the goods; and it may appear from the very description of the article, as, for example, "coatings" or a "hot-water bottle." But where an article is capable of being applied to a variety of purposes the buyer must particularize the specific purpose he has in view. The purpose for which the goods are required need not necessarily appear in the contract itself, but may be proved by evidence of matters *ab*

*extra* the contract, even when it is in writing, if such evidence does not contradict the contract. The purpose intended "may be gathered from the course pursued by the parties, and from their conduct and acts and writings antecedent, but leading up to the contract itself." ' The omission from subsection (1) of the words 'and the goods are of a description which it is the seller's business to supply,' which occur in the English act and the insertion in both acts of the words 'whether he be the manufacturer or not' tends to make every case under that subsection turn on the reliance of the buyer on the seller's skill."

In *Wallis* v. *Russell,* 2 Ir. R. 585, 616, Lord Justice FITZGIBBON, in construing the English Sales Act, said:

"*Caveat emptor* does not mean—in law or Latin—that the buyer must 'take chance'; it means that he must 'take care.' It applies to the purchase of specific things, e. g., a horse or a picture, upon which the buyer can, and usually does, exercise his own judgment; it applies also whenever the buyer voluntarily chooses what he buys; it applies also where, by usage or otherwise, it is a term of the contract, express or implied, that the buyer shall not rely on the skill or judgment of the seller. But it has no application in any case in which the seller has undertaken, and the buyer has left it to the seller, to supply goods to be used for a purpose known to both parties at the time of the sale."

Section 8230, subdivision 1 (Section 69, Uniform Sales Act), provides:

"(1) Where there is a breach of warranty by the seller, the buyer may, at his election; (a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price; * * ."

2. The evidence offered by the defendant tended to prove that the goods when sold and delivered were unsound and that because thereof, defendant had sustained material damage. At common law, the measure of damage on a breach of warranty on the sale of goods was the difference between the value of the goods, if they had corresponded with the warranty, and their actual value in their damaged condition. The measure of damage, under the Uniform Sales Act, is declared by subdivision 6, Section 8230, Or. L., to be "the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty," and by subdivision 7 thereof: "In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty." Since there was evidence tending to prove that the goods in question were unsound when sold and delivered to defendant, and that defendant had sustained damage thereby, plaintiff was not entitled, as requested, to a directed verdict for the full amount of the unpaid balance of the purchase price of the goods and, therefore, the motion for a directed verdict was properly overruled.

3. One of the instructions requested, the refusal of which is assigned as error, was to the effect that the defense of breach of warranty is not a complete defense and bars recovery only to the extent of the actual damages sustained, and that the jury should limit its consideration to those particular containers concerning which there was some evidence tending to prove them defective, and should find for the

plaintiff the price of all goods not shown to be defective, and that because certain of the goods were spoiled, the jury could not infer that all of the goods were spoiled, the presumption being that they were all sound. We think that under the evidence offered the request was properly refused. There was evidence tending to prove that defendant had sold to various customers a part of the goods and that in many instances these goods were returned to defendant because a considerable part thereof, when opened, were found to be unfit for use. The evidence also tended to show that the cause of the goods being defective was the improper manufacture thereof and that whether the goods were defective or not could only be ascertained by opening the containers in which they were inclosed. The evidence further tended to show that, after numerous complaints had been made, the defendant shipped substantially all that then remained on hand to a wholesaler at Portland, Oregon, and that because of the defective condition of the goods none of it could be sold. While much, if not all, of this evidence was disputed by the testimony of other witnesses, we think that, under the facts shown by the case, the court properly left to the jury to determine whether all or a part only of the goods was unfit for use and, hence, unsalable, and that, if the jury believed the testimony of defendant's witnesses, it was warranted in finding, as it did, that such a large part of the goods being defective, no portion of them was salable.) This was the reasoning applied in *Muller* v. *Eno*, 14 N. Y. 597, where the court, in a similar case, said:

" * * If the jury should believe the facts testified to by the witnesses Chambers and Peck, I cannot see that any rule in law would be violated by leaving

them to infer, if they pleased so to do, that all the lawns purchased by the defendants were unsound to the same extent as those particularly examined. I do not say that the inference would be a very strong one, or that it might not be overcome by what was considered more direct evidence on the other side; but I think the whole question was for the jury, and that the charge went too far in substantially withdrawing it from them."

Hence, under the facts and circumstances shown, it was proper for the court to refuse to give the requested instruction.

4. Another instruction which was requested and refused was one which would have been applicable if the transaction in question had come within the provisions of subsection 2 of Section 8178, Or. L. The term "contract to sell or sale by description" should be confined to cases where the identification of the goods which are the subject matter of the bargain depends upon the description. It is doubtful from the manner in which the goods were described in the order whether this is a case which would be governed by subsection 2, but whether so or not, the facts proven brought the case within the rule as stated by Mr. Williston, as follows: "If the seller holds himself out to the buyer as the manufacturer of the subject matter of the bargain, the case is governed by the principles applicable to sales by manufacturers." 1 Williston on Sales (2 ed.), §§ 224 and 232. The other instructions requested and refused, with the exception of the one covered by assignment No. 14, were not applicable to the facts proven in the case and for that reason should not have been given. The one which was applicable did not correctly state the law, since it, in terms, excluded any consideration by the jury of the question

of whether the deterioration of the goods after delivery was caused or resulted from some inherent defect in the goods existing at the time of delivery.

5, 6. The other assignments of error relate to admission in evidence over the objection and exception of plaintiff of testimony offered by defendant tending to prove defendant's attempt to sell and certain sales made by defendant of the goods at a reduced price after it had been discovered that the goods were defective, and the price paid therefor, the condition the goods were found to be in, and the fact that some of the goods were used, some returned and some thrown away. It was contended that the evidence of the condition of the goods was too remote, and also, that since the property in the goods had passed to defendant upon delivery, the price for which a part of them had been sold and what had been done with those found to be unfit for use, was irrelevant and immaterial. Defendant was attempting to show the entire transaction and a complete history of its connection with and of everything that had been done by it in selling and in attempting to sell and dispose of the entire stock, and while some of this testimony might have been objectionable in a case where the facts were different, we cannot say that, under the facts of this case, any reversible error was committed in its introduction. While it is true that the property in the goods had passed to defendant upon their delivery by the carrier at Medford, Oregon, and that for the defendant to maintain its defense it was necessary for it to show that the condition of the goods at the time of their delivery was not reasonably fit for the purpose for which they had been ordered, yet this could be done only by showing their condition at the time the

containers were opened and, if when opened they were found to be then unfit for the purpose for which they had been bought, it would be some evidence of their condition at the time they were bought, and if found, when opened, to be unfit for use, the jury might reasonably infer that their defective condition was caused by some inherent defect in the goods which might have rendered them unfit for use at the time of their delivery, or within such a short period thereafter as would make the marketing and use of the goods impossible. The fact that because the defendant attempted to sell the goods at a greatly reduced price and was unable to dispose of them for such price was evidence which the jury had a right to consider upon the question of whether plaintiff had breached its warranty by delivering defective goods. The inference to be drawn from these facts and the weight to be given to them were all questions for the jury. After considering the objections urged, we cannot say as a matter of law that any error was committed which would justify us in reversing the judgment. The judgment will, therefore, be affirmed.

AFFIRMED. REHEARING DENIED.

BEAN, BELT and BROWN, JJ., concur.