[No. 33389.   Department Two.   October 13, 1955.]

FLORENCE FRISKEN, *Respondent,* v. ART STRAND FLOOR COVERINGS, INC., *Appellant.*[1]

[1] Reported in 288 P. (2d) 1087.

*Oliver R. Ingersoll,* for appellant.

*Robert L. Snyder* and *B. Franklin Heuston,* for respondent.

ROSELLINI, J.—The respondent, Florence Frisken, is the owner of a building in Shelton, Washington, occupied by her tenant, Mell Chevrolet Company. On November 20, 1952, she entered into an agreement with the appellant, a corporation engaged in the business of selling and laying floor coverings, whereby the latter contracted to furnish and install grease-proof asphalt-tile flooring in the showroom and office of the respondent's building.

Prior to the submission of the appellant's bid, its president, Arthur E. Strand, examined the floors of the showroom and office, which were of concrete covered with magnesite, and recommended a tile which would meet the respondent's needs. The appellant's bid was accepted, and by December 3, 1952, the installation was completed.

Within a week or ten days after the flooring was laid, it was observed that a dark sticky substance was oozing up between the tiles. On the strength of the appellant's assurance that the condition was temporary and would disappear in a few weeks, the respondent paid for the flooring.

When the oozing or sloughing continued after six weeks had elapsed, complaint was made again, but it appears that nothing was done to correct the condition. Eventually the magnesite beneath the tile grew spongy and caused the floor to rise in spots, resulting in an uneven surface and cracks in the tile. Agents of the appellant inspected the floor and reported that the magnesite was crumbling and falling apart. Still nothing was done to repair or remedy the condition, and after it had continued for more than a year, this action was commenced to recover upon an alleged breach of an implied warranty of fitness.

At the conclusion of the trial, the court entered findings of fact, conclusions of law, and a judgment in favor of the respondent.

While the appellant admits that the flooring is not satisfactory for the purpose for which it was intended, it contends that (1) the defects were caused by factors beyond its control, and that the implied warranty of fitness does not cover such defects, or (2) if there was a breach of warranty, the defect was waived when the respondent paid for the installation.

The defense of waiver was not pleaded, and the appellant did not request a finding that the respondent had waived the defect. As we have often said, this court will not consider a theory which was not passed upon by the trial court and is presented for the first time on appeal. *Muck v. Snohomish County Public Utility Dist.*, 41 Wn. (2d) 81, 247 P. (2d) 233 (1952); *Smith v. King County*, 28 Wn. (2d) 917, 184 P. (2d) 562 (1947).

The facts as found by the trial court do not establish a waiver, since payment was made after the appellant had given its assurance that the sloughing would disappear, a fact which negatives any implication of an intent to waive the defect. Furthermore, the full extent of the damage did not appear until several months after payment was made. The fact that the respondent had paid for the flooring would not deprive her of her right to recover for a breach of which she neither knew nor had reason to know at the time. See

*Eliason v. Walker*, 42 Wn. (2d) 473, 256 P. (2d) 298 (1953), a case in which the plaintiffs, purchasers of a heating system, elected to rescind the contract after the equipment had been paid for and had been in operation for three months. We held that the delay did not constitute a waiver of their right to rescind for breach of warranty, since the inadequacy of the heating system was not established until it had been in operation for some time.

We turn now to the appellant's contention that the trial court erred in finding a breach of warranty. According to the findings, the respondent advised the appellant that an attractive floor was needed because the room was to be used for display purposes; she relied upon the skill and judgment of the appellant's agent, who represented to her that the appellant could and would install a floor which would satisfy her needs. The floor, the trial court found, was entirely unsatisfactory. It concluded that there had been a breach of the implied warranty of fitness imposed under Rem. Rev. Stat., § 5836-15 [*cf.* RCW 63.04.160], which provides in part as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The appellant argues that there was no competent evidence that the unsatisfactory condition was caused by faulty installation, and it is the custom of contractors not to warrant that magnesite flooring will not deteriorate and damage tile which is laid over it; therefore, there could be no implied warranty of fitness. In regard to the latter contention, there was scant evidence of such a general custom; the trial court made no finding that a custom existed, and none was requested. This facet of the argument is consequently without merit.

The respondent's expert witness, to whose qualifications the appellant made no objection, testified that the sloughing and unevenness was caused by moisture coming

up through the magnesite, and that the "sweating" could have been avoided by the use of a sealer. The appellant's expert witnesses testified that there is no sealer which can prevent this sweating, and that it occurs where no barrier has been erected beneath the magnesite or concrete; that there is nothing which can be done to prevent the occurrence once the magnesite and concrete have been improperly laid. The record contains no finding on this precise point, and apparently the trial court did not consider it controlling. Assuming that the fact was established, this in itself does not relieve the appellant of liability.

While the appellant's president testified that he did not and could not have anticipated the condition which developed, he stated that the magnesite was tested for moisture before the tile was laid. The inescapable inference is that he knew of the possibility that moisture would rise through the magnesite and damage the tile. Furthermore, another of appellant's witnesses, also a flooring contractor, testified that, unless a water barrier is installed, magnesite has a tendency to sweat and cause discoloration of the tile, and that it is customary to warn the purchaser of this possibility. In this instance, no inquiry was made to ascertain whether a water barrier had been installed, and the respondent was not advised of the risk involved.

■ No error is assigned to the court's finding that the appellant was familiar with climatic conditions in the area and knew the location of the floor with reference to the ground level as well as the nature and composition of the subflooring. Knowing or being charged with knowledge that there was a risk involved, of which respondent was obviously ignorant, and having failed to warn her of this risk before she made her investment, the appellant must be held to have warranted that the floor would be fit for the intended use regardless of the structure of the underflooring. It is the respondent's ignorance of the nature and characteristics of floorings which establishes her reliance on the appellant's skill and judgment. Had the deterioration of the tile resulted from some latent defect in the underflooring which the appellant could not have anticipated, or which

the respondent as well as the appellant might have anticipated, a different question would be presented.

The view we take is in accord with our holding in *Columbia Concrete Pipe Co. v. Knowles,* 36 Wn. (2d) 602, 219 P. (2d) 557 (1950). The defendant in that case, a farmer in eastern Washington, had contracted with the plaintiff for the purchase and installation of a pipe line which would irrigate certain designated portions of his farm. It was agreed that the defendant would dig the ditch for the pipe line, which he proceeded to do. The plaintiff's agents, knowing that the ditch was probably too shallow, nevertheless laid the pipe, which soon sprang a number of leaks and proved to be unsatisfactory. Had the pipe been laid at the proper depth, it appeared that the leaks would not have occurred. We held that subdivision (1) of Rem. Rev. Stat., § 5836-15, was applicable, and that the defendant, having made known to the plaintiff the purpose for which the pipe line was to be used and having relied upon the plaintiff's skill and judgment, was entitled to recover on his cross-complaint for a breach of an implied warranty of fitness.

As we said in *Lundquist v. Coca Cola Bottling, Inc.,* 42 Wn. (2d) 170, 254 P. (2d) 488 (1953), it is not necessary to prove negligence in order to recover for a breach of an implied warranty. The plaintiff must allege and prove: first, that he made known to the seller, either expressly or by implication, the particular purpose for which the article was required, and second, that it appeared that he relied upon the seller's skill and judgment when he purchased the article. Under the rule of *Columbia Concrete Pipe Co. v. Knowles, supra,* if the seller undertakes to install the purchased item, he impliedly warrants that, after installation, it will be fit for the use intended. Of course, the seller may disclaim such a warranty, or the circumstances may negative reliance; but there is no evidence of a disclaimer here, and there is no question but that the respondent relied upon the appellant's superior skill and judgment, and that the appellant was made aware of this fact.

As we have construed the statute, the facts of this case fall within its provisions.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

