[No. 34621. Department Two. January 2, 1959.]

B. M. McCORMICK, *Appellant,* v. W. T. HOYT *et al.,*
*Respondents.*[1]

[1]Reported in 333 P. (2d) 639.

*Montgomery, Montgomery & Purdue* and *John D. Blankinship*, for appellant.

*Chavelle & Millard* (*Glenn W. Toomey*, of counsel), for respondents.

ROSELLINI, J.—This is an action by the appellant to recover the balance of the price of "one lot of clocks and clock materials" sold to the respondents. The respondents cross-complained, alleging that the merchandise was faulty in that many of the clocks were without works and other materials were unusable. The respondents asked for rescission of the contract and for a return of the payments they had made. The trial court found that under the circumstances of the sale, there was an implied warranty of merchantability, which was breached, and awarded the respondents a judgment of rescission of the contract. The appeal is from that judgment.

There is little dispute regarding the facts. The appellant, for approximately seven years and until 1954, operated a clock repair shop in Seattle. He had closed that shop about a year before the sale with which this case is concerned and had moved the clocks, cases, parts and materials used in

connection with the business to the basement of his residence. At the time of the sale the appellant was no longer engaged in the business of clock repair or clock sales.

W. T. Hoyt, referred to hereafter as the respondent, had been actively engaged in the business of wholesaling jewelry and watch repairing for over fifty years. His son, an active participant in his father's business, was also an expert clockmaker. The appellant and respondent had been acquainted for several years, the respondent having sold clock parts and supplies to the appellant.

In May, 1955, the appellant moved out of the house in which the clocks, cases, parts and materials were stored. He decided to dispose of these items and approached the respondent. As a result of their conversation the respondent went, with his son, to the appellant's house where he was given the opportunity to inspect the items. When he left the house, the appellant gave him the key and told him to inspect the clocks and materials further at his leisure and to let him know what he decided. About a week later, the respondent called the appellant to his place of business where he made an offer for the lot, which offer the appellant accepted; and thereupon the respondent drew up a memorandum of sale of "one lot of clocks and clock parts" for $1,000. A down payment of $75 was made at that time, and the balance was to be paid in installments of $75 per month.

On the evening of May 20, 1955, following execution of the memorandum, the respondent and his son personally moved the clocks and clock materials from the basement of the appellant's house to a storeroom adjacent to the respondent's shop. The respondent began working on the clocks immediately upon taking possession thereof. A second installment was paid on or about July 1, 1955, and a $5 payment was made in August. In the latter part of August, the respondent returned the goods to the appellant, who refused to accept them, and this law suit followed.

It was the testimony of the respondent that, although he was given a full opportunity to inspect the offered items, as

a practical matter he could not utilize it because the clocks and containers were stacked so close together and there were so many of them that an unwarranted amount of time would be consumed in the inspection. He therefore relied on the appellant's description of them as "clocks and clock materials" and assumed that the clock cases which he saw contained clock movements. After he had removed the goods to his place of business, he began to examine them. Two months later he concluded that ninety-five per cent of the cases contained no clock works and an equal amount of the materials were unusable. He admitted that he and his son personally had carried all of the items out of the basement, but stated that they were in too much of a hurry to examine them at that time.

▪ The trial court treated this sale as a sale by description under subd. (2) of RCW 63.04.160, the uniform sales act. That provision reads:

"Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality."

We think this provision clearly inapplicable. In the first place, it applies only where the goods are identified by description, and not where the goods to be purchased are specified. *Williams v. S. H. Kress Co.*, 48 Wn. (2d) 88, 291 P. (2d) 662; *American Soda Fountain Co. v. Medford Grocery Co.*, 128 Ore. 83, 262 Pac. 939; 1 Williston on Sales 588, § 230.

The parties to this transaction contracted with reference to the clocks and other materials stored in the appellant's basement. It was not the agreement that the appellant would select from those items those which were merchantable or which conformed to the standard or trade definition of "clock." Rather, it was agreed that the respondent would make whatever inspection he desired to make and decide whether he wished to purchase the lot. This was done.

The evidence also showed that at the time of this transaction, the respondent was not a dealer in any sense, but was making an isolated sale of his stock in trade.

In support of the judgment, the respondent argues that subd. (1) of RCW 63.04.160 should apply. Under that provision,

" . . . where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The respondent testified that he had expected to repair the clocks which he thought were contained within the clock cases and sell them as second-hand clocks. There was no testimony that he so informed the appellant; but assuming that this intention was implicit in the transaction, there was nothing to indicate to the appellant that the respondent, in making his decision to purchase, relied on the skill and judgment of the appellant. A secret reliance on the skill and judgment of the seller is not enough to give rise to the warranty. It must *appear*, at the time, that there is such reliance. RCW 63.04.160. See *Frisken v. Art Strand Floor Coverings*, 47 Wn. (2d) 587, 288 P. (2d) 1087. There was no contention that the appellant made express representations concerning the quality of the goods, or that the respondent requested any evaluation of the goods by the appellant. On the contrary, the respondent was told to exercise his own judgment in evaluating them and to take his time in inspecting. Due to his own carelessness, he failed to inspect and made his offer on the basis of assumptions, uncommunicated to the appellant. For this, the appellant cannot be held liable.

The defects which the respondent found in the clocks and materials were not latent, but were readily observable on inspection. Furthermore, as an expert of many years experience, the respondent was at least as capable of judging the quality of the goods as was the appellant.

The mere fact that an inspection will require labor and inconvenience does not give the buyer the right to assert an implied warranty of quality and fitness after he has been given an opportunity to inspect and failed to take ad-

vantage of it. *Salzman v. Maldaver*, 315 Mich. 403, 24 N. W. (2d) 161, 168 A. L. R. 381; *Bailey Trading Co. v. Levy*, 72 Cal. App. 339, 237 Pac. 408. As the rule is stated in 1 Williston on Sales 603, § 234, under the uniform sales act, as well as at common law, the buyer must have relied on the seller's skill and judgment, and if the buyer has equal or superior skill and opportunity to exercise it, no inference of reliance may be warranted.

Subdivision (2) of RCW 63.04.160 provides:

"If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

Such were the defects in the clocks involved in this case. The absence of clock works inside the cases was readily discernible on the slightest examination. The weight of a clock case alone should indicate this fact to a layman. The respondent chose not to make an inspection and not to ask for a warranty, but to rely upon his own assumptions. If, in doing so, he made a bad bargain, the responsibility is his and not that of the appellant.

The judgment is reversed.

HILL, C. J., DONWORTH, WEAVER, and FOSTER, JJ., concur.